**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

HERBERT ROY ZUCKER,

                             Plaintiff,                     **REPORT AND**
                                                               **RECOMMENDATION**

    -against-

                                                     21-cv-4825 (FB) (ST)

HSBC BANK, USA, N.A. and
PHH MORTGAGE CORPORATION

                             Defendants.
-------------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

## INTRODUCTION

       Plaintiff Herbert Zucker brought this action in federal court alleging various violations of

federal lending regulations and statutes, violations of the New York General Business Law,

breach of contract, and negligence subsequent to the filing of a foreclosure action in New York

State Court by HSBC on the property owned by Plaintiff at 71 Old Tappan Road in Glen Cove,

New York.  The instant action also follows a previous 2017 action between the parties removed

to the Eastern District of New York in which Plaintiff sought a determination of his claim to the

Old Tappan Road property after a different foreclosure action was filed against the property by

Defendants.  Defendants have each moved to dismiss Plaintiff's claims in this action on

preclusion grounds, under the doctrine of abstention, and for failure to state a claim.  For the

reasons discussed herein, I recommend Defendants' motions be GRANTED.

## BACKGROUND

## I.      History Between the Parties

The course of events that has led to this case began in April of 2006, when Plaintiff refinanced the first mortgage on the property at 71 Old Tappan Road with HSBC for $2.3 million, with an interest rate of 6.5% for a 30-year term. Pl. Am. Compl. ¶ 1, ECF No. 7.  In February of 2009, Plaintiff entered into a Loan and Mortgage Modification Agreement (LMMA), modifying the terms of the first mortgage on the property. *Id.* at ¶ 2.

On October 6, 2009, Mortgage Corp., a nominee for HSBC Mortgage Corp., filed a summons and complaint against the Plaintiff in State Court in Nassau County, and accelerated the entire amount due on the mortgage. *See Zucker v. HSBC Bank, USA,* No. 17-CV-2192, 2018 U.S. Dist. LEXIS 74478, 2018 WL 2048880, *3 (E.D.N.Y. May 2, 2018) (hereinafter *Zucker I*). In August of 2013, that foreclosure action was dismissed and the notice of pendency cancelled. *Id.*

On August 19, 2013, Plaintiff entered into a Second LMMA with HSBC. Pl. Am. Compl. ¶ 3.  That modified the mortgage for approximately $2,948,000, contained a 40-year term, and set the interest rate at 2% for the first eight years. *Id.*

On February 21, 2017, Plaintiff filed a complaint in State Court, moving under Article 15 of the N.Y. Real Property Actions and Proceedings Law for a ruling that HSBC was time-barred from enforcing its mortgage lien. *Zucker I* at *1.  Central to Plaintiff's claim was that the six-year statute of limitations to enforce the mortgage had run since the acceleration of the note on October 6, 2009. *Id.*  One of the arguments made by Plaintiff was that the Second LMMA did not de-accelerate the loan because it was not recorded and he never received a copy of it back from HSBC. *Id* at *10.  Additionally, Plaintiff alleged violations of the Telephone Consumer Protection Act, the Fair Debt Collection Practices Act, the NY General Business Law, the Truth in Lending Act, the Real Estate Settlement Procedures Act, the Dodd-Frank Act, and for

common law slander of credit and intentional infliction of emotional distress. *Id* at *1.  He claimed violations of these various statutes and regulations because of a course of conduct in trying to collect the debt which he claimed was harassing, misleading, and continued despite knowledge the debt was time-barred. *Id.*  The complaint was removed to this Court.

In *Zucker I*, the same Defendants brought a motion to dismiss.  Judge Hurley granted that motion to dismiss on almost all of Plaintiff's claims.  Judge Hurley found that the Second LMMA did restart the statute of limitations on the mortgage debt and, thus, dismissed the RPAPL and FDCPA claims. *Id.* at *20-21.  He also held that the complaint failed to plead specific facts in support of the general business law claim, including any consumer-oriented conduct. *Id.* at *23-24.  He dismissed the remaining federal claims as abandoned and deficiently pled, though he did allow the TCPA claim against PHH to survive. *Id.* at *21-23, *27-28.  Judge Hurley then granted a motion for judgment on the pleadings on the remaining claims for HSBC. *See Zucker v. HSBC Bank, USA,* 2018 U.S. Dist. LEXIS 226313, 2019 WL 2903694 (E.D.N.Y. June 27, 2018).  A stipulation of dismissal was entered by Zucker and PHH on December 3, 2021.

On August 30, 2018, HSBC filed a new foreclosure action on the 71 Old Tappan Road Property in New York State court. *See* Zarlock Dec., Exh. 3, ECF No. 23-4.  Zucker asserted two counterclaims in response, one for damages for "an intentional effort to disparage [his] good name, reputation and creditworthiness" and one for expenses and attorney's fees from what he called a "frivolous lawsuit." *Id.* at Exh. 4, 6-8.

**II.    Facts of This Action**

Zucker then brought this action in federal court on August 26, 2021 based, he claims, on new harms and violations traceable to the 2018 foreclosure action filed in State court.  The facts

underlying this action are taken, for the purposes of this motion to dismiss, from Plaintiff's complaint.

In his complaint, Plaintiff claims the Second LMMA (the Aug. 13, 2013 agreement which was partially the subject of the first federal case) is indeed a fully executed agreement which modified the mortgage on the 71 Old Tappan Road property, as it was signed on October 1, 2013 by a representative of HSBC. Pl. Am. Compl. ¶ 14.

Plaintiff claims that prior to the Second LMMA's execution, the Defendants requested that he make three "trial payments," which he did. Upon execution, he paid an agreed upon sum, and afterwards, he made the first four monthly payments. Those were accepted by Defendants. He was never provided an accounting for those payments. *Id.* at ¶ 15.

On January 23, 2014, Plaintiff sent his monthly payment to Defendants. *Id.* at ¶16. On February 5, 2014, Defendants sent Plaintiff a letter returning his check which said his check was "being returned" because it was "insufficient to bring [his] account current." Plaintiff claims that when he and his lawyers attempted to resolve the issue, Defendants ignored those efforts. *Id.* at ¶ 17. On February 27, 2014, Plaintiff again sent in his monthly payment for the amount required under the Second LMMA. *Id.* at ¶ 18. On March 24, 2014, that payment was also returned as it was "insufficient to bring [Plaintiff's] account current." *Id.* at ¶ 19.

Plaintiff again called Defendants to try to resolve the issue. He sent another check, this time for the monthly payments under the Second LMMA for January through April 2014. *Id.* at ¶ 20. On May 8, the check was again returned. *Id.* at ¶ 21. Plaintiff and his attorney made more calls. On May 28, 2014, an attorney for Defendants emailed Plaintiff and said, "I have been advising the bank since the Modification Agreement was signed that the file must be closed ASAP." *Id.* at ¶ 22. In June of 2014, Plaintiff spoke to a Loss Mitigation Assistant Supervisor

with Defendants and sent him various documentation. *Id.* at ¶ 24.  He emailed Plaintiff back and said, "All the paperwork you have sent has been reviewed and we are going to make the necessary updates. This may take a little time…" *Id.* at ¶ 25.  Though Plaintiff continued to attempt to contact Defendants, he says no one took any action. *Id.* at ¶ 26.

Between April 2014 and April 2017, Plaintiff claims PHH "released a barrage of at least 268 abusive, harassing, and threatening phone calls" to Plaintiff and his wife to collect on the 2006 mortgage, as opposed to the Second LMMA. *Id.* at 27.  Plaintiff says that at no time was he given a statement of his account for the mortgage as modified by the Second LMMA nor was he sent a mortgage statement. *Id.* at ¶¶ 28-29.

When Defendants filed the foreclosure action in State court, Plaintiff claims they did so based upon the 2006 mortgage terms, not the terms contained in the Second LMMA, despite the ruling of this Court in *Zucker I* that the Second LMMA restarted the statute of limitations on the original mortgage debt. *Id.* at ¶¶ 30-31.

Plaintiff asserts that the claims he has made in this lawsuit are based solely upon the new foreclosure action, though he includes the facts detailed above as "background."

He claims Defendants violated the RESPA servicing violations by failing to establish live contact with him 36 days after the Foreclosure action was filed and continuing every 36 days thereafter, failing to provide written notice every 45 days commencing with the filing of the new foreclosure action, failing to provide the required early intervention verbal and written notifications or a single point of contact after the foreclosure was filed, failing to provide loss mitigation assistance as required, and by obtaining force-placed insurance on the Property without first confirming Plaintiff had failed to pay for hazard insurance and without providing disclosures to Plaintiff. *Id.* at ¶¶ 39-49.

Plaintiff additionally claims violation of the Truth in Lending Act by Defendants because they failed to provide periodic statements which contained the required information "for each monthly billing cycle since the Foreclosure was filed." *Id.* at ¶¶ 54.

Plaintiff also claims violation of New York General Business Law §349(a) based upon Defendant's conduct in filing the foreclosure action. He writes in his complaint that the filing of this foreclosure action was "false and misleading" and "part of a pattern of conduct engaged in by HSBC and PHH that had a broader impact on consumers at large than solely on [Plaintiff]." In furtherance of that contention, he points to a 2016 Department of Justice Consent Judgment against HSBC "for the purpose of remediating harms resulting from the unfair and deceptive conduct of HSBC" which he claims was "of the type alleged in this complaint." *Id.* at ¶¶ 55-58. He also claims Defendants violated the NYGBL by failing to comply with the required servicing standards. *Id.* at ¶ 59.

He additionally brings a breach of contract claim against HSBC for filing the Foreclosure Action and citing to the 2006 agreement instead of the Second LMMA, a claim against HSBC for a breach of the covenant of good faith and fair dealing, and a claim for negligence against both Defendants under the theory that they "breached [their] duty of care by negligently not acknowledging the existence of the Second [LMMA]." *Id.* at ¶¶ 61-76.

Defendants argue Plaintiff's claims are precluded by *Zucker I*, that even if they are not precluded this Court should abstain given the concurrent State foreclosure action, and that, in any event, the claims fail a 12(b)(6) analysis. I will deal with each of these arguments in turn.

## LEGAL STANDARD

When assessing a Rule 12(b)(6) motion to dismiss, a court must determine whether the Plaintiff's complaint contains cognizable claims made up of allegations that, if proven, would

show that the Plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). *Twombly* and *Iqbal* command that all elements of the Plaintiff's claim must be plausibly alleged in the complaint, such that the complaint contains more than "naked assertions," or allegations that amount to "sheer possibility," containing instead "factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*

In assessing a motion to dismiss under Rule 12(b)(6), the Court "must accept all factual allegations [in Plaintiff's complaint] as true and draw all reasonable inferences in favor of the non-moving party." *Giambrone v. Meritplan Ins. Co.*, 13-CV-7377 (MKB) (ST), 2017 WL 2303980 at *3 (E.D.N.Y. Feb. 28, 2017) (internal quotation marks, citation omitted) (*adopted by Giambrone v. Meritplan Ins. Co.,* 13-CV-7377, 2017 WL 2303507 (E.D.N.Y. May 24, 2017)).

## DISCUSSION

### I.    Some of Plaintiff's Claims Are Precluded

The first argument Defendants make is that Plaintiff's entire complaint is precluded under the doctrine of *res judicata*, otherwise known as claim preclusion. HSBC Br., 5-7, ECF No. 24; PHH Br., 3-6, ECF No. 25-1.  They argue this complaint is merely a re-packaging of *Zucker I*, which was already decided on the merits by this Court previously. *Id.*  Plaintiff counters by arguing that the filing of the foreclosure action in State court was a material event subsequent to

the *Zucker I* litigation, and these new claims arise out of that subsequent action. Pl. Br. 9-15, ECF No. 23-11.

Under both New York State and federal law, the doctrine of claim preclusion provides that "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Maharaj v. BankAmerica Corp.,* 128 F.3d 94, 97 (2d Cir. 1997) (quoting *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398 (1981)). "The first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit; that is to say, the second cause of action requires the same evidence to support it and is based on facts that were also present in the first." *Maharaj,* 128 F.3d at 97 (*quoting* Restatement (Second) of Judgments §24(1) (1982)). A claim will be precluded where: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.,* 214 F.3d 275, 285 (2d Cir. 2000).

A dismissal for failure to state a claim is a final judgment on the merits for the purposes of determining preclusive effects. *Berrios v. N.Y.C. Housing Auth.,* 564 F.3d 130, 134 (2d Cir. 2009). In *Zucker I,* Judge Hurley, on a motion to dismiss by Defendants, dismissed all of Plaintiff's federal claims (except the TCPA claims), as well as Plaintiff's NYGBL claim, for failure to state a claim. That was an adjudication on the merits for the purposes of determining preclusive effects. And the Plaintiff here is the same as in *Zucker I.* Therefore, the only question for claim preclusion purposes is whether the claims in this action were or could have been asserted in *Zucker I.*

If claims in the second action arises out of a separate transaction that occurred after the commencement of the prior litigation, they are not precluded. *S.E.C. v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1463 (2d Cir. 1996). And, despite Defendants' contrary contentions, a failure to amend or supplement the pleadings of a previous action to include the subsequent transaction in the earlier case, does not preclude a second lawsuit with claims based upon that subsequent transaction. *Id*; *Cohen v. Board of Educ. Of East Ramapo Cent. School Dist.*, 443 N.Y.S.2d 170 (2d Dep't 1981). The crucial date for claim preclusion is the date the complaint in the first action was filed. *Curtis v. Citibank, N.A.,* 226 F.3d 133, 139 (2d Cir. 2000). However, "claim preclusion may apply where some of the facts on which a subsequent action is based postdate the first action but do not amount to a new claim." *Storey v. Cello Holdings LLC,* 347 F.3d 370, 384 (2d Cir. 2003). In other words, the legal claim must actually arise out of the subsequent transaction to save it from preclusion.

The complaint in *Zucker I* was filed on February 21, 2017 and arose out of a dispute over HSBC's ability to enforce its mortgage lien and the efforts used to collect from Plaintiff. The foreclosure action Plaintiff cites to for his claims in this case occurred on August 30, 2018, after the filing of *Zucker I.* This was a subsequent transaction which had not occurred when *Zucker I* was filed. Even though litigation in *Zucker I* continued until it was dismissed with prejudice by stipulation on December 14, 2021, Plaintiff was not under an obligation to supplement the pleadings in that case to include new claims arising out of the August 30, 2018 foreclosure action.

However, it is not enough to merely allege a claim arose because of the August 30, 2018 foreclosure action, it must actually have arisen out of that subsequent transaction. Therefore, a claim by claim analysis is necessary to determine whether each claim in this case, in fact, arose

out of the August 30, 2018 foreclosure action such that it would not be precluded by Plaintiff failing to have raised it in *Zucker I.*

### a. Plaintiff's First Set of Claims

Plaintiff's first claim is for violations of the Real Estate Settlement Procedures Act (12 U.S.C. § 2605), in particular violations of RESPA Servicing Regulations for failing to make efforts establish live contact with Plaintiff after the foreclosure, provide required written notice every 45 days commencing with the filing of the foreclosure, provide a single point of contact for loss mitigation measures, and disclose to Plaintiff force-placed insurance had been obtained for the property. He also alleges violation of the RESPA prohibition against servicers obtaining force-placed hazard insurance unless there is a reasonable basis to believe Plaintiff did not have hazard insurance on the property. *See* 12 C.F.R. § 1024.37, 1024.39, 1024.40, 1024.41; 12 U.S.C. §2605(k)(1). Plaintiff brought a claim under RESPA in *Zucker I* alleging, "By reason of the actions and inactions of the defendants and the violations of…RESPA…plaintiff and all those in a class similarly damaged are entitled to statutory damages and attorney's fees." *Zucker 1,* \*21-22. Those claims were dismissed.

The RESPA regulations do require written notice prior to placing force-placed insurance on the property and do require a servicer of federally-related mortgage to only obtain hazard insurance if there is a reasonable basis to believe the borrower has failed to comply with the loan contacts insurance requirements. *See* 12 C.F.R. §1024.37; 12 U.S.C. § 2605(k)(1). Even putting aside that fact that Plaintiff makes no claim this is a "federally-related mortgage" as required for this regulation to control, this claim does not arise out of the subsequent 2018 foreclosure action. Instead, Plaintiff says he raised it in this action because "In April 2019, at a hearing on the Foreclosure Action, [he] learned for the first time that HSBC and PHH had

obtained force-placed insurance for the property." Pl. Am. Compl. ¶ 44.  But Plaintiff does not claim that the procurement of the force-placed insurance occurred subsequent to *Zucker I* or that the failure to notify occurred subsequent to *Zucker I*, merely that he learned about any violations subsequent to *Zucker I.*

The Second Circuit has held, "Plaintiff's discovery of additional facts following [a resolution on the merits] does not block the application of res judicata." *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.,* 198 F.3d 85, 88 (2d Cir. 1999).  The only exception to this rule is where "the evidence was either fraudulently concealed or it could not have been discovered with due diligence." *Saud v. Bank of New York,* 929 F.2d 916, 920 (2d Cir. 1991).  Given that Plaintiff has not alleged these acts occurred after the filing of the first action nor that the insurance placement was fraudulently concealed or could not have been discovered with due diligence, I recommend finding that these claims be precluded.

Plaintiff also alleges HSBC and PHH failed to provide early intervention verbal and written notifications as required by regulation 12 C.F.R. §1024.39 "no later than the 45th day of the borrower's delinquency and again no later than 45 days after each payment due date so long as the borrower remains delinquent." 12 C.F.R. §1024.39(b)(1).  Over the course of the parties' dealings with each other, there have been multiple periods of delinquency.  However, the regulation requires compliance after the next payment due date that follows an event where "The borrower reaffirms personal liability for the mortgage loan." 12 C.F.R. §1024.39(c)(2).  Judge Hurley found Plaintiff re-affirmed personal liability upon singing the Second LMMA in 2013.  Delinquency after that date then would require additional notification.  Plaintiff brought *Zucker I* on February 21, 2017 and claimed in it that Defendants were violating RESPA through inaction.  There is no reason why, if Defendants were required to notify on delinquencies after the Second

LMMA in 2013, that Plaintiff could not have brought this claim in February of 2017, given that any alleged delinquency would have begun in 2014, when Plaintiff claims Defendants stopped accepting his payments and found them insufficient. Thus, this claim should be precluded.

Plaintiff additionally alleges Defendants did not provide him a single point of contact for loss mitigation measures as required under 12 C.F.R. §1024.40. But once again, this regulation requires intervention after *delinquency* not after foreclosure proceedings are filed. Any alleged delinquency by Plaintiff under the Second LMMA occurred beginning in 2014. Thus, Plaintiff could have brought these claims in *Zucker I,* and they did not actually arise out of the 2018 foreclosure action. Indeed, Plaintiff did bring claims relating to violations of laws based upon Defendants' attempts to collect on Plaintiff's alleged delinquencies in *Zucker I*. He cannot now claim these violations somehow newly emerged out of the 2018 foreclosure action. If Zucker was unaware of loss mitigation options because of Defendants' conduct, it was not specifically due to Defendants' conduct after the new foreclosure action, but due to Defendants' conduct dating back to well before *Zucker I* was filed. This claim should also be precluded.

Thus, Plaintiff's "Count One" should be barred by claim preclusion.

**b. Plaintiff's Second Claim**

Plaintiff's next claim against both Defendants is a violation of the Truth in Lending Act (15 U.S.C. § 1638(f)). Plaintiff brought TILA claims in *Zucker I* which were dismissed, in which he alleged generic "actions and inactions of the defendants" which violated the Act.

According to Plaintiff in this action, Defendants violated the TILA by not providing periodic statements with specific disclosures in them, as required under 12 C.F.R. 1026.41 "from, on, or about August 30, 2018, and continuing thereafter." Pl. Am. Compl. ¶ 53. Once again, however, this claim does not arise out of the filing of the new foreclosure action.

12

The regulation requires, "A servicer…[to] provide the consumer, for each billing cycle, a periodic statement meeting the requirements of [this regulation]." 12 C.F.R. 1026.41(a)(2). Unless the Defendants suddenly failed to provide these periodic statements after filing the foreclosure action but did so up and until *Zucker I*, there is no new transaction by Defendants which gives rise to this claim. Plaintiff does not plead or argue that that is the case, merely seeming to argue in his brief that the violations "occurred on or after August 30, 2018" with no information on when they started or continued until. And, in *Zucker I*, Plaintiff *did* allege violations of the TILA were occurring prior to August 30, 2018. Thus, with no facts pled to show this is indeed a claim based off the subsequent transaction, I recommend this claim be precluded.

### c. Plaintiff's Third Claim

Plaintiff's third claim is a violation of New York General Business Law §349(a) which prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." NY CLS Gen Bus § 349(a). Plaintiff brought a claim against Defendants under the NYGBL § 349(a) in *Zucker I*, which was dismissed.

This claim Plaintiff bases upon "HSBC's and PHH's conduct in filing the [August 30, 2018] Foreclosure Action." Pl. Am. Compl. ¶ 57. In alleging this is consumer-oriented conduct, as required to allege a cognizable claim under NYGBL § 349(a), he points to a pattern of conduct by Defendants including similar unfair and deceptive conduct addressed in a 2016 Consent Judgement against Defendants. *Id.*

While the conduct Plaintiff cites to to support his contention there is a pattern of consumer-oriented conduct (the 2016 Consent Judgment) that pre-dates *Zucker I*, the conduct Plaintiff claims violated his rights in this action was the filing of the new foreclosure action,

which occurred after *Zucker I*.  While that claim will still need to withstand 12(b)(6) analysis under *Iqbal* and *Twombly*, it is a claim that arose because of a transaction which occurred after the filing of *Zucker I.*  Thus, I recommend this claim not be precluded.

### d. Plaintiff's Fourth and Fifth Claims

Plaintiff's next claims are for breach of contract and breach of the covenant of good faith and fair dealing against HSBC.  The contention from Plaintiff is that HSBC breached when it filed the August 30, 2018 foreclosure action based upon what Plaintiff views as the incorrect mortgage agreement. *See* Pl. Compl ¶¶ 61-71.  Putting aside, for now, the question of whether Plaintiff has made out a plausible claim for relief, if the act of filing the foreclosure action was indeed a breach, the claims for breach would have arisen out of the foreclosure filling, a separate subsequent transaction from *Zucker I.*  Thus, I recommend that these claims not be precluded.

### e. Plaintiff's Sixth Claim

Plaintiff's final claim is for negligence by both Defendants. That claim rests on Plaintiff's contention that both HSBC and PHH owed him a duty of care to "acknowledge and service the Second LMMA" and that that duty was breached by the filing of the August 30, 2018 foreclosure action. Pl. Am. Compl. ¶¶ 74-75.  Again, putting aside the 12(b)(6) analysis for now, if Plaintiff is correct then the breach of the duty was the filing of the new foreclosure action.  As a result, the claim as pled arose out of a subsequent transaction and should not be precluded by *Zucker I.*

Therefore, I recommend only Plaintiff's first and second claims be precluded.

As I find the remaining claims arose out of the filing of the August 30, 2018 foreclosure action, which occurred less than three years from the filing of this action, Defendants' additional

statute of limitations arguments as to those claims are unavailing. *See* HSBC Br., 9-11, ECF No. 24.

## II.     Plaintiff's Arguments Are Not Precluded by Judicial or Collateral Estoppel

Next, HSBC argues Plaintiff should be precluded from arguing in this action that the Second LMMA was a binding modification of the agreement given that, in *Zucker I*, he argued that it was never executed by Defendants and so could not de-accelerate the loan in that action. HSBC Br., 7-9.  Plaintiff meanwhile argues that the sole issue decided in *Zucker I* was that the Second LMMA restarted the statute of limitations on the mortgage debt and so there is no preclusion of the issues Plaintiff litigates here. Pl. Br., 15-19.

Plaintiff's position certainly is not precluded by judicial estoppel.  Judicial estoppel "prevents a party who secured a judgment in his favor by virtue of assuming a given [factual] position in a prior legal proceeding from assuming an inconsistent position in a later action." *Maharaj v. BankAmerica Corp.*, 128 F.3d 94, 98 (2d. Cir. 1997).  Here, even if I were to grant that Plaintiff's position in *Zucker I* was inconsistent with his position now, his position did not prevail in *Zucker I*.  Therefore, judicial estoppel does not apply.

A related but not equivalent doctrine is that of collateral estoppel or issue preclusion. "The doctrine of collateral estoppel…bars a party from re-litigating in a second proceeding a factual or legal issue that has already been decided against him in a prior proceeding." *Ferring B.V. v. Serenity Pharms., LLC,* 391 F. Supp 3d 265, 281-82 (S.D.N.Y. 2019).  Collateral estoppel attaches where: (1) the issues in both proceedings are identical; (2) the issue in the prior proceeding was already actually litigated and actually decided; (3) there was a full and fair opportunity for litigation in the prior proceeding; and (4) the issue previously litigated was

necessary to support a valid and final judgment on the merits. *Flood v. Just Energy Mktg. Corp.,* 904 F.3d 219, 236 (2018).

Here, I agree with Plaintiff that the issue decided in *Zucker I* is not the same as the issues in this action.

In deciding whether to dismiss Plaintiff's claim that he was entitled to a cancellation of the mortgage due to the fact that the statute of limitations had run on the action to enforce the vendor's lien, Judge Hurley decided a fairly narrow issue in *Zucker I*, namely whether Plaintiff signing the Second LMMA "restarted the statute of limitations on the mortgage debt." *Zucker I* at *15. He found that it had. That is a different issue from "whether HSBC fulfilled its obligations under the 2013 LMMA" which HSBC argues is at issue here. HSBC Br., 8. Therefore, issue preclusion should not attach.

### III.     The Court Should Not Abstain Under *Colorado River*

Next, Defendants argue that even if some claims survive preclusion analysis, this Court should abstain from hearing those claims under the abstention doctrine given the concurrent State foreclosure action. HSBC Br., 7, fn. 2; PHH Br., 5, fn. 3.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River Water Conservation Dist. V. United States,* 424 U.S. 800, 813 (1976). The doctrine is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it…" *County of Alleghany v. Frank Mashuda Co.,* 360 U.S. 185, 188-89 (1959). There are three general categories where abstention is appropriate.

The first is where there is a federal constitutional issue which might be mooted or presented differently depending on how a state court resolves an issue of pertinent state law. *County of Alleghany,* 360 U.S. at 189. Here, the only claims remaining are a violation of the

New York General Business Law, breach of contract, breach of the covenant of good faith and fair dealing, and negligence, so there are no federal constitutional issues.

The second category is where the case presents difficult questions of state law which bear on policy problems of substantial public import. *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25 (1959). Here, Plaintiff is only left with run of the mill state law claims, so the case does not fall into this category.

The third category is where the federal action is for the purpose of restraining certain types of state proceedings (criminal, nuisance, closures due to obscenity, or collection of state taxes), and there is no evidence of bad faith, harassment, or a patently invalid state statute. *Younger v. Harris,* 401 U.S. 37 (1971); *Douglas v. City of Jeanette,* 319 U.S. 157 (1943); *Huffman v. Pursue Ltd.,* 420 U.S. 592 (1975); *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293 (1943). The concurrent state proceeding is not one of these types of cases, so this category also does not apply.

The U.S. Supreme Court has additionally recognized abstention is sometimes appropriate in situations where "[wise] judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" counsels towards abstention. *Colo. River*, 424 U.S. at 817 (*quoting Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,* 342 U.S. 180, 183 (1952)). This is known as *Colorado River* abstention. The Court has also written, however, "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Colo. River,* 424 U.S. at 818.

Abstention under *Colorado River* may be appropriate where the parallel State litigation could comprehensively dispose of litigation and abstention would conserve judicial resources.

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012).  The litigation is parallel where "substantially the same parties are contemporaneously litigating substantially the same issues in different forums." *Dittmer v. County of Suffolk,* 146 F.3d 113, 118 (2d Cir. 1998).  "…[P]arallelism is achieved when there is substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Mazuma Holding Corp. v. Bethke,* 1 F. Supp. 3d 6, 20 (E.D.N.Y. 2014) (quoting *In re Comverse Tech., Inc.,* No. 06-CV-1849, 2006 U.S. Dist. LEXIS 80195, 2006 WL 3193709, *2 (E.D.N.Y. Nov. 2, 2006). "Federal and state proceedings are parallel for purposes of abstention when…there is an identity parties, and the issues and relief sought are the same." *U.S. Bank Nat'l Ass'n v. Easter Fordham DE LLC,* 804 Fed. Appx. 106, 107 (2d Cir. 2020) (citing *Nat'l Union Fire Ins. Co. v. Karp,* 108 F.3d 17, 22 (2d Cir. 1997)).  If the two cases are indeed parallel, only then does the Court assess the factors to decide whether abstention is appropriate. *Cassis v. Fannie Mae,* No. 21-CV-969, 2021 U.S. Dist. LEXIS 248357, 2021 WL 6197064, *10-11 (E.D.N.Y. Dec. 31, 2021) (citing *Niagara Mohawk Power Corp.,* 673 F.3d at 100-01).

To determine whether this action is parallel to the State action we must examine the parties, the issues that the claims arise out of, and the relief sought.

The parties to the State action are substantially the same.  HSBC and Zucker are named parties and, though PHH is not named in the caption, it is referenced in the complaint as the servicer of the loan and the party that "intends to cause a foreclosure action to be commenced…" Zarlock Dec., Exh. 3, ¶ 7.

The issue in this action is whether Plaintiff is entitled to damages because Defendants violated the law and the parties' agreement when they filed the foreclosure in State court.  The

issue in the State court action is whether Defendants in this action may foreclose on Plaintiff's property.  These are not the same issues.

If the State court were to allow the foreclosure, it could comprehensively dispose of Plaintiff's claims in this action, as it could confirm that Defendants relied on the proper mortgage agreement in that action.  But if the State court were to find Plaintiff's allegations to be true, as we assume at the motion to dismiss stage, all the claims in this action would still exist and would not be disposed of by the State court decision not to enforce the foreclosure.  Just because Defendants were not able to foreclose does not mean they broke the law or violated the parties' contract by filing the action.

Relatedly, the relief sought in both actions is not the same.  In State court, Plaintiff seeks a declaration the Second LMMA is controlling and thus an end to the foreclosure action.  In this Court, he seeks damages for alleged breaches of state law, contracts, and duties as a *result* of the filing of the foreclosure action.  The relief sought is not the same, and, if Plaintiff is correct, the State court proceedings will not dispose of all claims presented here.  Thus, the cases are not parallel and *Colorado River* abstention is not appropriate.  While there is a chance that a State court could render a decision that the 2006 mortgage is controlling, which could conflict with a Federal court decision which upheld Plaintiff's claims, the Supreme Court has held the "mere potential for conflict in the results of adjudications, does not, without more warrant staying the exercise of federal jurisdiction." *Colorado River* 424 U.S. at 816.

Thus, I recommend this Court not abstain from hearing this action.

## IV.    Plaintiff's Remaining Claims Should Be Dismissed for Failure to Plausibly Plead a Claim for Relief

This brings the Court to the final stage of its analysis: whether Plaintiff has plausibly pled his remaining claims for relief so as to survive a motion to dismiss.  As detailed above, this

requires the complaint to contain sufficient factual matter which, when accepted as true, allows

the Court to draw the reasonable inference that the Defendant is liable for the misconduct

alleged. *Iqbal,* 556 U.S. at 678; *Twombly,* 550 U.S. at 557.  I recommend the Court find that

Plaintiff has not plausibly pled any of his remaining claims.

      **a.**     **New York General Business Law §349(a)**

      To plausibly plead an allegation of a violation of the New York General Business Law

§349(a), a Plaintiff must plead facts that plausibly show (1) the defendant engaged in consumer-

oriented conduct; (2) that the conduct was materially misleading; and (3) that the plaintiff

suffered an injury as a result of that allegedly deceptive act or practice. *Weisblum v. Prophase

Labs, Inc.,* 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015).  Plaintiff alleges that "HSBC's and PHH's

conduct in filing the Foreclosure Action was materially false and misleading" and that this is part

of a "pattern of conduct engaged in by [Defendants] that had a broader impact on consumers at

large" citing to a 2016 Consent Judgment entered against the Defendants.

      Defendants argue that Plaintiff fails to plead consumer-oriented conduct, only making

"vague references to a 2016 consent judgment…[and] [n]o attempt is made to tether those

references to the facts underlying his claim." HSBC Br., 14; PHH Br., 12-13.  Both Defendants'

briefs cite to the New York Court of Appeals' holding that "private contract disputes, unique to

the parties" do not constitute consumer-oriented conduct under NYGBL § 349(a). HSBC Br., 13;

PHH Br., 13; *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.,* 85

N.Y.2d 20, 25 (1995).  In response, Plaintiff reiterates that the conduct he alleges Defendants

engaged in which was violative of his rights is similar to that which led to the 2016 Consent

Judgment, showing that the pattern of conduct was directed at consumers beyond just Plaintiff

himself. Pl. Br., 27-28.  Plaintiff points to this Court's opinion in *Dolan v. Fairbanks Capital Corp.,* as support for his contention. 930 F. Supp. 2d 396, 416-17.

As a threshold matter, it should be noted that in *Dolan,* the defendant did not dispute that the conduct the plaintiff alleged violated the New York General Business Law was consumer-oriented. *Dolan,* 930 F. Supp. at 419.  Therefore, the issue was not analyzed by this Court in that case, and Plaintiff's reliance is misplaced.

Turning to this action, it is important to distinguish the conduct Plaintiff bases his NYGBL claim on from the other similar conduct he cites to show that conduct was consumer-oriented.  Plaintiff alleges that he was injured by "HSBC's and PHH's conduct in filing the Foreclosure Action" which was "materially false and misleading." Pl. Am. Compl. ¶ 57.  While he can use the allegations leading to the 2016 Consent Judgement as support for his claim that the action that harmed him is a widespread practice of the Defendants such that the conduct has a "broader impact on consumers at large," he cannot fold into his claim actions by Defendants that led to the 2016 Consent Judgment which harmed others but not himself. *Oswego Laborers'* 85 N.Y. 2d at 25.

The only specific allegation he makes as to the filing of the 2018 foreclosure action to show it was "consumer-oriented" is an allegation that in Exhibit A of the 2016 Consent Judgment, HSBC was required "to ensure all factual assertions made in pleadings (including Complaints in Judicial Foreclosures, Declarations, affidavits, and sworn statements filed by or on behalf of HSBC in judicial foreclosures) were accurate and complete and supported by competent and reliable evidence." Pl. Am. Compl. ¶ 58(a).  But even granting Plaintiff that this requirement appeared in the Consent Judgment, that alone is not enough to allow a Court to reasonably infer that Defendants' conduct in filing the 2018 foreclosure action has "a broader

impact on consumers at large" as required for such conduct to be considered "consumer-oriented." *Oswego Laborers',* 85 N.Y. 2d at 25. Plaintiff has not pled any facts to show such behavior was a "typical consumer transaction" or that this filing of the Foreclosure Action was anything but a "single shot transaction." *Genesco Entertainment v. Koch,* 593 F. Supp. 743, 752 (S.D.N.Y. 1984).

Plaintiff alleges the filing of the Foreclosure Action was false and misleading because Defendants knew the Second LMMA was controlling between the parties as opposed to the 2006 agreement. Even granting that to Plaintiff, this is a "[p]rivate contract dispute[], unique to the parties" and as such does "not fall within the ambit of" NYGBL § 349(a)." *Oswego Laborers'* 85 N.Y.2d 25. Thus, I recommend this claim be dismissed.

### b. Breach of Contract Claim and Breach of Covenant of Good Faith and Fair Dealing Claim

Plaintiff alleges HSBC breached his contract with it "by filing the…Foreclosure Action against Zucker on the initial mortgage from 2006 and continuing thereafter to pursue the Foreclosure Action." Pl. Am. Compl. ¶ 64.

To sustain a claim for breach of contract, Plaintiff must plausibly plead "(1) an agreement, (2) adequate performance by plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.,* 632 F.3d 793, 799 (2d Cir. 2011). Plaintiff has pled that he and HSBC had an agreement in the Second LMMA and that he performed "by tendering the payment to HSBC and PHH as required by that contract between January 13, 2014 and March 24, 2014." Pl. Am. Compl. ¶ 63. However, in pleading breach, Plaintiff only pleads in conclusory fashion, "HSBC breached the Second LMMA by filing the…Foreclosure Action…" *Id.* at ¶ 64. He does not cite any specific textual contractual provision which HSBC breached by filing the action.

22

In this Circuit and in New York State, Courts have held that the plaintiff must at least have alleged which provisions of a contract were breached in order to survive a motion to dismiss on a breach of contract claim. *See Wolff v. Rare Medium, Inc.,* 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002) ("a plaintiff must identify the specific provision of the contract that was breached as a result of the acts at issue"), aff'd, 65 F. App'x. 736 (2d Cir. 2003); *Timberg v. Toombs,* 2022 U.S. Dist. LEXIS 58569 at *26 (E.D.N.Y. Mar. 30, 2022) ("Plaintiff fails to allege a claim for breach of contract…because he fails to identify any particular provision of the agreement breached by Defendants."); *Negrete v. Citibank, N.A.,* 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016) (citing *Swan Media Group, Inc. v. Staub,* 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2002)) (a pleading falls below the *Twombly-Iqbal* standard where "the Complaint does not specify which clause of the Agreement Defendant is alleged to have breached"); *Sud v. Sud,* 621 N.Y.S.2d 37 (1st Dep't 1995) ("A breach of contract claim will be dismissed…where the plaintiff fails to allege, in nonconclusory fashion, the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated.").

The only provision Plaintiff cites specifically as being breached is the implied covenant of good faith and fair dealing.  Though Plaintiff pleads this as a separate claim, "New York law…does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Acc. Ins. Co.,* 310 F.3d 73, 83 (2d Cir. 2002).  Instead breach of this covenant is treated "merely as a breach of the underlying contract." *Fasolino Foods Co. v. Banca Nazionale del Lavoro,* 961 F.2d 1052, 1056 (2d Cir. 1992) (internal quotations and citations omitted).

"[I]n New York, all contracts imply a covenant of good faith and fair dealing in the course of performance." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.,* 98 N.Y.2d 144, 153 (2002). This covenant includes a pledge that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Kirke La Shelle Co. v. Armstrong Co.,* 263 N.Y. 79, 87 (1933). The covenant does not imply obligations that are inconsistent with the contractual relationship but does encompass "any promises which a reasonable person in the position of the promise would be justified in understanding were included." *511 W. 232nd Owners Corp,* 98 N.Y.2d at 153 (quoting *Rowe v. Great Atl. & Pac. Tea Co.,* 46 N.Y. 2d 62, 69 (1978)). However, "[t]he covenant of good faith and fair dealing is not a general code establishing some amorphous standard of good behavior between contracting parties. It 'applies where an implied promise is so interwoven into the contract 'as to be necessary for the effectuation for the purposes of the contract.'" *Cambridge Capital LLC v. Ruby Has LLC,* 565 F. Supp. 3d 420, 457 (S.D.N.Y. 2021) (quoting *M/A-COM Security Corp. v. Galesi,* 904 F.2d 134, 136 (2d Cir. 1990)).

Plaintiff alleges this covenant was violated by HSBC because it "refused to recognize the Second LMMA," "attempted to collect on the initial 2006 mortgage," and "brought the Foreclosure Action…knowing full well that Zucker was entitled to the contract terms of the Second LMMA that has a more favorable interest rate." Pl. Am. Compl. ¶ 70. Once again, however, Plaintiff fails to plead with particularity what obligation was implied in by the covenant which HSBC breached.

Again, to the extent Plaintiff pleads breach of contract based on the "attempts to collect" on the delinquencies which began in 2014, those are precluded as they should have been and were brought in *Zucker I* and dismissed. Therefore, Plaintiff must rely on the bringing of the

foreclosure action in State court for his claim of breach of contract. It appears based upon Plaintiff's complaint that he is alleging the covenant implied into the Second LMMA a requirement that HSBC not file a foreclosure action predicated upon the 2006 agreement. But such a provision is not an implied promise so interwoven into the Second LMMA as to be necessary for the effectuation of its purpose, which was to modify Plaintiff's payment structure. Instead whether the required manner of foreclosure was modified in the Second LMMA is a textual question.

Indeed, within the Second LMMA it says, "Borrower understands and agrees that: All the rights and remedies, stipulations, and conditions contained in the Mortgages relating to default in the making of payments under the Notes shall also apply to default in the making of the modified payments hereinafter…nor shall this Agreement in any way impair, diminish or affect any of Lender's rights or remedies pursuant to or arising out of the Notes and the Mortgages…" Zarlock Dec., Exh. 2 ¶ 7. This provision seems to imply that, not only did the parties contract around the issue of enforcement, but the Second LMMA may have specifically left the enforcement provisions set in the 2006 agreement unchanged.

If Plaintiff wished to allege that Defendant violated the enforcement provisions of the Second LMMA by filing the foreclosure action based upon the 2006 contract, he needed to do so by specifically pleading what the term was and how it was violated. He did not.

As such, I recommend Plaintiff's breach of contract claim be dismissed.

### c.    Negligence

Finally, that brings us to Plaintiff's last claim, which is a negligence claim against both Defendants. He alleges Defendants owed him a duty of care and breached that duty of care "by negligently not acknowledging the existence of the Second LMMA and not properly servicing

25

the Second LMMA in accordance with federal law and regulations and filing the Foreclosure Action in New York Supreme Court, Nassau County seeking to enforce the initial 2006 mortgage rather than the subsequent and superseding Second LLMA." Pl. Am. Compl. ¶¶ 73-74. That is the full extent of the facts pled to support this claim.

A claim of negligence requires Plaintiff to plausibly plead facts showing (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty; and (3) injury substantially caused by that breach. *Lombard v. Booz-Allen & Hamilton, Inc.,* 280 F.3d 209, 215 (2d Cir. 2002). Defendants argue it is well-established that the relationship between mortgagor and mortgagee cannot be the basis for a negligence claim because such a borrower is not owed any duty of care. *See* HSBC Br., 16; PHH Br., 13-14.

The only relationship Plaintiff relies upon to create a duty of care is that of the Second LMMA contract between mortgagor and mortgagee. However, there is no duty of care between contracting parties. *See Abraham v. Am. Home Mortgage Servicing, Inc.* 947 F. Supp. 2d 222, 236 (E.D.N.Y. 2013) (quoting *Banco Indus. De Venezuela, C.A. v. CDW Direct LLC,* 888 F. Supp 2d 508, 512 (S.D.N.Y. 2012) ("Where the only duty owed to the plaintiff arises from a valid contract, a negligence claim does not lie")). Nor is there a duty of care between a lender that is not in a fiduciary relationship with a borrower, such as an ordinary mortgagor and mortgagee, as here. *See Best v. Bank of Am., N.A.,* 2015 U.S. Dist. LEXIS 116178 at *20 (E.D.N.Y. Sep. 1, 2015) ("[T]he negligence claim is subject to dismissal because a mortgage servicer owes no duty of care to a borrower, which is a necessary element of a negligence claim"); *Abraham,* 947 F. Supp 2d at 236 ("It is well settled under New York law that a lender is not in a fiduciary relationship with a borrower, and thus a lender does not owe a borrower any special duties.").

26

Thus, Plaintiff has not pled facts which would show a duty of care between Defendants and himself and, as such, his negligence claim should be dismissed.

## CONCLUSION

For the foregoing reasons, I recommend the Plaintiff's complaint be dismissed in its entirety.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

_____/s/_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
      August 1, 2022